IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SUSAN ARNONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-0482-CV-W-HFS |
| ) | |
| AMERICAN DRUG STORES, INC., ) | |
| d/b/a Osco Drugs, Inc., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Before the court is the motion of defendant American Drug Stores, Inc. d/b/a Osco Drug, Inc. for summary judgment. Defendant seeks dismissal of the complaint in which plaintiff, appearing pro se, alleged gender discrimination and retaliation. Plaintiff asserted these claims pursuant to Title VII of the Civil Rights Act 42 U.S.C. § 2000, et. seq.

**Background Facts**

As an initial matter, it is noted that plaintiff has failed to comply with Local Rule 56.1 as it pertains to summary judgment motions[1]. Here, plaintiff simply states the nature of the case, and contends that defendant's statements of undisputed material facts do not prove anything on

---

[1] Local Rule 56.1 requires, in relevant part, that suggestions in opposition to a motion for summary judgment begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists. Further, each fact in dispute shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party relies, and, if applicable, shall state the paragraph number in movant's listing of facts that is disputed.

defendant's behalf. Thus, all of defendant's undisputed facts should be deemed to be true. <u>Lowry v. Powerscreen USB, Inc.</u>, 72 F.Supp.2d 1061, 1063 (E.D.Mo. 1999).

Nonetheless, the Eighth Circuit has determined that when a plaintiff fails to respond adequately to a motion for summary judgment, a district court should not treat such a non-response as sufficient to dispose of the motion. <u>Lowry</u>, at 1064. "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken. <u>Id</u>. This would appear to be even more appropriate, where as here, the plaintiff has appeared before the court pro se. In so ruling, even on an unopposed motion for summary judgment, the court should review the facts in a light most favorable to the party who would be opposing the motion. <u>Id</u>.

As previously noted, the material facts as asserted by defendant remain largely undisputed by plaintiff, but where controverted, will be duly noted. Plaintiff began working for defendant on December 13, 2000, as a cashier at its store no. 5105, located at 5314 NW 64th Street, Kansas City, Missouri. Plaintiff was interviewed by, and subsequently hired by general manager, Bill Edgeller. According to plaintiff, but disputed by Edgeller, plaintiff had a prior intimate relationship with Edgeller on 2 occasions in 1995, prior to her employment with defendant, when she worked as a prostitute. Plaintiff claims that from the time of the illicit liaison in 1995, through her interview in 2000, her appearance had changed, and she did not believe Edgeller initially recognized her.

In February of 2001, Edgeller promoted plaintiff to the position of supervisor-in-training. In a performance review dated March of 2001, Edgeller rated plaintiff's performance overall as "meets requirements," but noted that she needed to improve her performance in ordering stock, to eliminate overstocks, and cash-handling responsibilities to avoid overages and shortages. In July of 2001, plaintiff took a leave of absence to have surgery, and returned to work in October of 2001.

2

Upon her return to work, Edgeller relieved plaintiff of her duty to order stock and cash-handling responsibilities until she demonstrated greater proficiency.

On March 14, 2002, Edgeller gave plaintiff a second performance review, rating her overall performance as "does not meet requirements." Plaintiff refused to sign the review, and claimed that Edgeller was discriminating against her due to her gender regarding their prior relationship, and was creating a pretext to terminate her employment. Plaintiff also claims that she was not permitted to leave the manager's office where the review was given; however, defendant claims that, after being advised by Loss Prevention representative Dwight Crosby to send plaintiff home, plaintiff refused to leave and the police were summoned.

Crosby then conducted an investigation and interviewed plaintiff. According to Crosby, plaintiff stated that she had been a prostitute for several years before working for defendant, and that Edgeller had been a client of hers on 2 occasions, in 1987, and 1995. (Defense Ex. 3: Crosby Declaration; ¶ 4). Plaintiff also stated that the meetings occurred in Edgeller's home - a white house with a detached garage and a long driveway - located in Independence, Missouri. (Id). According to Crosby, plaintiff explained that she "f***ed so many johns" she had trouble remembering all of them, and she did not immediately recognize Edgeller until after commencing employment with defendant, and she stated her belief that Edgeller ultimately recognized her also and wanted her to leave her employment before she remembered their relationship and revealed it to others. (Id). Crosby then interviewed Edgeller who stated that he did not have a personal relationship with plaintiff at any time, and stated his home address in Blue Springs, Missouri. (Id; ¶ 5). Crosby avers that he drove to Edgeller's home, and noted that it did not have either a detached garage or a long driveway. (Id). Based on the discrepancies between plaintiff's allegations and the physical facts, and

3

the lack of corroboration of plaintiff's allegations by others, Crosby concluded that her allegations were not credible. (Id; ¶ 6).

On March 29, 2002, defendant offered plaintiff a transfer to another store, located at 4400 Northwest Barry Road, Kansas City, Missouri, less than 5 miles farther from her home, with the same title, rate of pay, and additional hours. Defendant advised plaintiff that in the event she refused the transfer, it would be considered a voluntary quit. Plaintiff was not willing to locate to the other store, and her employment with defendant was terminated.

## Analysis

**Standard of Review**

It is well established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wallette v. Thompson, 373 F.Supp.2d 986, 990 (D.N.D. 2005); quoting, Fed.R.Civ.P. 56©. A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Wallette, at 990; citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Wallette, at 990. The moving party has the initial burden of

4

demonstrating to the Court that there are no genuine issues of material fact. Id. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Id. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Id.; see also, Fed.R.Civ.P. 59(e). A mere trace of evidence supporting the non-movant's position is insufficient. Wallette, at 990. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. Wallette, at 990; Anderson, at 252.

Summary judgment should seldom be granted in cases alleging employment discrimination. Reed v. Rolla 31 Public School Dist., 374 F.Supp.2d 787, 802 (E.D.Mo. 2005). This is so "[b]ecause employment discrimination cases frequently turn on inferences rather than direct evidence," and are inherently fact-based. Reed, at 802. However, summary judgment is appropriate in employment discrimination cases, "where there are no disputed facts and only one conclusion is possible." Id. Moreover, there is no discrimination exception to the application of Fed.R.Civ.P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial. Id.

**Gender Discrimination**

In the sole count of her complaint, plaintiff alleges that she was subject to discriminatory treatment by defendant due to her gender which affected the terms, conditions, benefits, wages, and privileges of her employment. (Complaint: ¶ 33).

For purposes of summary judgment I will assume that hostility toward plaintiff was based on embarrassment of her supervisor because he had formally been a client of plaintiff's in a sexual

5

relationship. Assuming heterosexuality of Edgeller this would not have occurred if plaintiff had been a male. Although analysis is somewhat convoluted, situations arguably analogous to situations like this are sometimes classified as discrimination "because of sex" and sometimes not.

The situation can be generalized as one in which plaintiff may have lost her job because of a prior personal relationship or experience with her supervisor. Clearly that would not be a gender-driven adverse action. A sexual difference is not the essence of the alleged ill will.

Even on a more particularized level, this case is unlike such things as pregnancy and rape where one of the persons involved is invariably a woman. Even if a heterosexual relationship is one that occurs nineteen times out of twenty there is nothing intrinsically female in the plight claimed by plaintiff.

A former commercialized sexual relationship is presumably an almost unique situation, but one may suppose that a former girl friend might, on occasion, have a supervisor who becomes hostile because of that past history. But hostility could be engendered just as frequently by a supervisor of a former athletic rival. These are personal situations not, in my judgment, subject to regulation simply because one party is a male and another a female employee.[2]

An alternate analysis follows.

---

[2]Termination because of "rumors of an affair" would not be classified as because of a plaintiff's sex. Snope v. Staff Leasing, Inc., 43 F.Supp. 2d 1317, 1327-8 (M.D. Fla. 1998), citing Pasqua v. Metropolitan Life Ins. Co.,101 F.3d 514, 517 (7th Cir. 1996.

6

Plaintiff has not submitted any direct evidence of gender discrimination, therefore, the familiar McDonnell Douglas burden-shifting analysis applies[3]. Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005).

Under the McDonnell Douglas analysis, the elements of a prima facie discrimination claim are: (1) the employee belonged to a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated males. Turner, at 694. Once an employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action, and then shifts back to the employee to show that the employer's reason was pretextual. Id.

The basis of plaintiff's claims is that due to a prior personal relationship with Edgeller, once she began employment with defendant, Edgeller recognized her and began a calculated effort to induce her to quit before she could recognize him as a former client and reveal this to others. In support of this contention, plaintiff claims that Edgeller persuaded other members of management to participate in his endeavors, and insinuating remarks were made by management to plaintiff regarding her weight loss. Other instances of an "intolerable working environment" included a reduction in hours; false and inaccurate reviews; as well as deliberate attempts to portray her work with problems in over-stocking, and significant cash flow variances. Plaintiff also claims that upon her return from a leave of absence, she was humiliated due to the loss of her mailbox, the absence of her personal stocking cart, and exclusion from management meetings.

---

[3]Direct evidence of discrimination is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005).

7

Contrary to plaintiff's contentions, while the working environment and her relationship with co-workers may have been somewhat strained, it hardly rises to the level of discrimination based on gender. Excel Corp. v. Bosley, 165 F.3d 635, 641 (8th Cir. 1999) (personal animosity is not the equivalent of sexual harassment and is not proscribed by law). Title VII is not unwittingly expanded to impose liability on employers for condoning or not remedying offensive co-worker conduct that does not amount to discrimination "because of ..... sex." Excel Corp., at 641; 42 U.S.C. ¶ 2000e-2(a).[4]

Further, with the exception of belonging to a protected class, plaintiff fails to prove the other elements of a gender discrimination claim. Plaintiff fails to show that she met the legitimate expectations of defendant. In his declaration, Edgeller averred that at the time plaintiff was promoted to supervisor in training in February of 2001, he thought plaintiff was capable of progressing to the level of supervisor, but in the performance review of March 16, 2001, he noted that she needed to improve her performance in the areas of ordering and stocking. (Defense Ex. 1B; see also, Defense Ex. 2: ¶ 3). He avers further that plaintiff was not able to perform satisfactorily, so she was relieved of these functions, with no effect on her title or rate of pay. (Defense Ex. 3: ¶¶ 5-7). By the time of the next review on March 14, 2002, plaintiff's performance further deteriorated which resulted in a rating indicating that she did not meet requirements in several areas. (Defense Ex. 1B; see also, Defense Ex. 3: ¶ 9).

---

[4]See also, Boone v. Larson Mfg. Co., Inc., 299 F.Supp.2d 1008, 1020 (D.S.D. 2003) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview."); quoting, Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 81 (1998). The standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Boone, at 1020.

8

Plaintiff fails to establish the existence of a genuine issue of fact regarding this element. In fact, plaintiff admits that during the period of February 2001, through July of 2001, she was repeatedly warned about over-stocking, and before commencing her leave of absence in July of 2001, she was directed to stop ordering. (Defense Ex. 1A: pg. 56-60). Plaintiff also admits that she received a warning regarding an attendance issue for failing to time out. (Id: pg. 77, 80). Consequently, plaintiff acknowledged that she suspected the 2002 review would be more critical of her performance. (Id: pg. 100).

Plaintiff also fails to show that she experienced an adverse employment action. After the less than amicable meeting between plaintiff and Edgeller during the 2002 performance review, Crosby an investigator with Loss Prevention, conducted interviews and investigated plaintiff's allegations of a prior illicit relationship with Edgeller; but concluded that there was no basis for the allegation. (Defense Ex. 3: ¶¶ 4-7). However, due to the acrimonious relationship which ensued between plaintiff and Edgeller, by letter dated March 29, 2002, plaintiff was advised of her transfer to another store, with the same title and rate of pay[5]. (Id). Plaintiff was further advised that failure to accept the transfer would be considered a voluntary quit. (Id). Plaintiff simply states that she declined the transfer because it was a little farther than she wanted to travel, and since it was not her fault, it was not her duty to transfer. (Defense Ex. 1A: pg. 185). This is insufficient to defeat defendant's motion.

Moreover, not everything that makes an employee unhappy is an actionable adverse employment action. Riggs v. County of Banner, 159 F.Supp.2d 1158, 1166 (D.Neb. 2001). Rather,

---

[5] "A transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits." Turner v. Gonzales, 421 F.3d at 697; quoting, Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000).

9

an adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities. Riggs, at 1166-67.[6] The argument proffered by plaintiff is insufficient, she meets her burden only is she can present evidence that would allow a reasonable jury to conclude that the decision was based on her gender. McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 512 (8th Cir. 1995). This she fails to do. Id.

Finally, plaintiff submits no argument to show the existence of circumstances which give rise to an inference of discrimination. Plaintiff does not claim, nor does the evidence indicate that plaintiff was treated differently from similarly situated males. In fact, the evidence shows that when plaintiff continued to overstock, Norma Ealey, a female colleague, assumed that duty, and while on medical leave, other females, Shawna Beck, Janice Bostic, and Pat Frank, performed the cash handling duties. (Defense Ex. 2: ¶¶ 8-9). The entire basis of plaintiff's claim is that she was wronged because of her past conduct as a prostitute, which falls woefully short of an admissible claim of gender discrimination.

However, *assuming arguendo*, that plaintiff made a prima facie showing, the burden of production would then shift to defendant to show a legitimate, nondiscriminatory reason for its action. Van Arkel v. Warren County, 365 F.Supp.2d 979, 1003 (S.D.Iowa 2005). As noted above, defendant has come forth with declarations, as well as admissions by plaintiff, that her performance did not meet defendant's expectations, resulting in a reduction of responsibilities and a critical performance review. Defendant has also shown that there is no genuine issue that plaintiff's transfer

---

[6]Although Title VII tolerates no discrimination whether subtle or otherwise, this circuit has also acknowledged that employers have wide latitude to make business decisions, and has the right to assign work, change an employee's duties, refuse to assign a particular job, and to discharge for a good reason, a bad reason, or no reason at all, absent intentional discrimination. McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 511-12 (8th Cir. 1995).

10

was based on the inflammatory allegations regarding an illicit affair with Edgeller. Upon such a showing, the presumption of discrimination disappeared, and the burden shifted once more to plaintiff who must prove that the defendant's articulated justification is a pretext for discrimination. Van Arkel, at 1003. Plaintiff could have accomplished this either by rebutting the proffered reason with evidence of pretext or discriminatory animus. Id. Here, plaintiff has attempted to rebut defendant's reasons for transfer with conclusory allegations of personal animus based on a purported illicit liaison; this is insufficient, and bears little relevance to the matter of gender discrimination. Consequently, summary judgment will be granted on this issue.

**Retaliation**

To establish a prima facie case of retaliation actionable under Title VII, plaintiff was required to prove that (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between her protected conduct and the adverse employment action. Turner, 421 F.3d at 695-96. Again, in the event plaintiff establishes a prima facie case, the burden would shift to defendant to articulate a legitimate, nondiscriminatory reason for its actions, then the burden would shift back to plaintiff to show that defendant's reason was pretextual. Turner, at 696.

Plaintiff does not contend that she was engaged in statutorily protected conduct[7], and as previously determined, plaintiff has not shown evidence that she suffered an adverse employment action. Consequently, the required nexus between these two factors is absent, and plaintiff fails to

---

[7]To the extent plaintiff's charge of discrimination could be fairly seen as statutorily protected conduct, the charge was filed on September 6, 2002, which was subsequent to her voluntary quit. (Defense Ex. 1A: ¶ 190).

11

establish a prima facie case. Even, however, in the event plaintiff successfully established a prima facie case, as noted above, she fails to show that defendant's stated reasons for the transfer were pretextual. Thus, summary judgment will be granted on the retaliation claim.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment (ECF doc. 40) is GRANTED. The clerk of the court is directed to enter judgment in favor of defendant.

<pre>                                         /s/ Howard F. Sachs
                                         HOWARD F. SACHS
                                         UNITED STATES DISTRICT JUDGE</pre>

March 1, 2006

Kansas City, Missouri

12

Case 4:04-cv-00482-HFS   Document 56   Filed 03/01/06   Page 12 of 12